CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

MAY 02 2013

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:12CR00032 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| KIMBERLY ANN IESBERTS, | ) | |
| | ) | |
| Defendant. | ) | By:  B. WAUGH CRIGLER |
| | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury returned a multiple-count Indictment charging defendant in **Count One** with knowingly and intentionally conspiring to possess with intent to distribute, and to distribute, fifty (50) or more kilograms of marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Sections 846. Defendant was not charged in Counts Two and Three of the indictment. Defendant has entered into a plea agreement to plead guilty to Count One.

On April 24, 2013, a plea hearing was conducted before the undersigned. The defendant was placed under oath and testified that her full legal name is Kimberly Ann Iesberts, she was born on January 25, 1978, and she has completed more than two years of college. The defendant stated that she can read, write, and understand the English language. The defendant further stated that she was fully aware of the nature of the charges against her and the consequences of pleading guilty to those charges. The defendant informed the court that she was not under the influence of alcohol, drugs, or medicine of any sort, and that she suffered no condition that impaired her ability to understand what the court was saying or the nature of the proceedings. The defendant testified that she had received a copy of the Indictment pending against her, and

that she had fully discussed the charges therein and any defenses thereto, and her case in general, with her counsel. The defendant stated that she was pleading guilty of her own free will because she was, in fact, guilty. The defendant specified that she had taken a phone call from one of men delivering the marijuana and relayed that message to another individual. The defendant testified that she understood that the offense in Count One is a felony, and if her plea is accepted, she will be adjudged guilty of those offenses. The defendant agreed that she would not be considered a prevailing party with regard to any charges. The defendant acknowledged that the plea agreement only binds the United States Attorney's Office for the Western District of Virginia and no other state or federal prosecutor or enforcement agency.

The defendant acknowledged that the maximum statutory penalty is a $1,000,000 fine and/or imprisonment for a term of twenty years, together with a term of supervised release, and that there is no minimum term of imprisonment. The defendant was informed that parole has been abolished, and that if she is sentenced to prison, she will not be released on parole, but on supervised release, a violation of which could result in additional incarceration. The government was not seeking forfeiture or restitution, but the defendant stated that she abandoned any interest in the items seized as evidence in the prosecution of this case. Finally, the defendant testified that she understood that, upon conviction, she will be required to pay a mandatory assessment of $100 per felony count of conviction.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that she and her counsel had discussed how the Sentencing Guidelines might apply in her case. The defendant also testified that she understood that the court would not be able to determine the applicable guideline range,

for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines. The defendant stated that she understood that the eventual sentence imposed may be different from any estimate her attorney had given her, or any recommendation by the government, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant acknowledged it was agreed that the 2012 edition of the United States Sentencing Guidelines Manual is applicable. The defendant further acknowledged that, in the Plea Agreement, it had been stipulated that Sentencing Guidelines 2D1.1(a)(5) & (c), 3B1.2, 2D1.1(b)(16), and 2D1.1(b)(15) are applicable to her conduct, provided that she truthfully provides all information and evidence concerning the offenses in person at least fifteen (15) days prior to sentencing. The parties reserved the right to argue whether other guidelines should apply to defendant's case, and the government agreed that it would not object to any alternatives to incarceration available including a term of probation in lieu of imprisonment pursuant to 18 U.S.C. § 3561 and U.S.S.G. § 5B1.1. The defendant also stated that she understood that even if she fully cooperates with law enforcement, the government is under no obligation to file a motion to reduce her sentence for substantial assistance, and if the government makes the motion, it is up to the court to determine how much of a departure, if any, should be made. The defendant stated that she understood that, contingent upon her acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of her duties under the Plea Agreement, the government will recommend a two-level (2) reduction under U.S.S.G. § 3E1.1(a). The defendant agreed that she had knowingly and voluntarily waived her rights to request or receive any records pertaining to the investigation or prosecution of her case, including any records that may be sought under the Freedom of Information Act or the Privacy

Act of 1974. The defendant stated that she understood that substantial fines may be imposed in her case and she agreed to submit a financial statement within thirty days of a request for such or within three days of sentencing. Defendant further agreed that from the time of her signing of the plea agreement, or the date she signs the financial statement, whichever is earlier, she would not convey anything of value without authorization from the government. The defendant acknowledged her monetary obligations under the plea agreement, which calls for such to be due immediately and subject to immediate enforcement.

The defendant acknowledged that she was waiving her right to have a jury determine beyond a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant testified that she understood that she had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty and persist in that plea;
2. The right to a speedy and public jury trial;
3. The right to assistance of counsel at that trial and in any subsequent appeal;
4. The right to remain silent at trial;
5. The right to testify at trial;
6. The right to confront and cross-examine witnesses called by the government;
7. The right to present evidence and witnesses in her own behalf;
8. The right to compulsory process of the court;
9. The right to compel the attendance of witnesses at trial;
10. The right to be presumed innocent;
11. The right to a unanimous guilty verdict; and
12. The right to appeal a guilty verdict.

The defendant testified that she understood that, under the terms of the agreement she was waiving her rights to appeal, but that she was not waiving her right to appeal or have her attorney file a notice of appeal as to any issue which cannot by law be waived. The defendant acknowledged that she had agreed to waive her right to collaterally attack any order issued in the case, unless such attack is based on ineffective assistance of counsel or a constitutional defect in

jurisdiction. The defendant was informed that if she chose to appeal any issue which had been waived, the government could treat this as a breach of the plea agreement and recharge her.

The defendant testified that she understood that she may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. The defendant stated that she was satisfied with the advice and representation given to her in this case by her counsel, and that she believed the representation had been effective. The defendant asked the court to accept her plea of guilty to Count One.

## THE GOVERNMENT'S EVIDENCE

The defendant and the Government agreed to a Stipulation of Facts. The Stipulation of Facts having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

The offenses described below occurred within the Western District of Virginia. The following statement of facts briefly summarizes the facts and circumstances surrounding the defendant's criminal conduct. This statement does not contain all information obtained during the investigation or all facts applicable to an accurate presentence investigation report and sentencing guidelines calculation.

**Background**

On October 15, 2012, Trooper Clint Craft of the Oklahoma Highway Patrol conducted a traffic stop on an RV in Sequoyah County, Oklahoma. Trooper Craft initiated the traffic stop on the RV for exceeding the posted speed limit and a partially-obstructed license plate. Trooper Craft identified the driver of the RV (hereinafter "CS-1") and determined the driver was the sole occupant of the RV. Based on CS-1's nervous behavior, among other things, Trooper Craft

obtained consent to search the RV and subsequently seized packaged marijuana with a gross weight of 73.7 kilograms, which had been concealed in the undercarriage of the RV (the "Marijuana"). CS-1 stated that he was delivering the marijuana to Charlottesville, Virginia, to deliver it to his co-conspirator, Defendant David Frank Patterson (hereinafter, "Patterson").

CS-1 has known Patterson for a number of years, and on or before August 18, 2011, CS-1 agreed with Patterson to begin driving marijuana from California to Charlottesville, Virginia, where Patterson would then sell the marijuana to his contact there.

**Controlled Delivery**

After his arrest in Oklahoma, CS-1 agreed to cooperate in making a controlled exchange of the Marijuana to Patterson in Charlottesville, Virginia, where Patterson was expecting delivery. On October 16, 2012, at approximately 8:15 p.m., Drug Enforcement Administration agents (hereinafter, "Agents"), led by Special Agent Jason Alznauer, outfitted CS-1 with a concealed transmitting/recording device, and at approximately 9:30 p.m., CS-1 met with Patterson in Charlottesville, Virginia. At this meeting, Patterson told CS-1 that his marijuana customers did not want to do the transaction at night and that they would complete the transaction the following morning. Patterson asked CS-1 to meet him at the same location the following morning to deliver the Marijuana.

On October 17, 2012, at approximately 8:22 a.m., CS-1 met with Patterson at the agreed upon location in Charlottesville, Virginia, for the purpose of delivering the Marijuana to Patterson. At approximately 8:36 a.m., after the exchange had occurred, Patterson drove away from the meeting location with the Marijuana. Shortly thereafter, Agents stopped Patterson and

arrested him, at which time the Marijuana was recovered from Patterson's vehicle. A laboratory test later revealed that the Marijuana had a net weight of approximately 55.076 kilograms.

Patterson gave a statement to Agents in which he stated that all of the Marijuana in the October of 2012 described above was to be purchased by someone named "Chris" at 2608 Rio Mills Road in Earlysville, Virginia (hereinafter, the "Residence"), which Agents identified as Bishop's home based on a search of public records. Patterson acknowledged having interacted with "Chris" on multiple occasions. Agents showed Patterson a photograph of Bishop, and Patterson identified Bishop as the "Chris" that was to purchase the Marijuana. At approximately 12:00 p.m. on October 17, 2012, Patterson made a monitored and recorded telephone call to Bishop's cellular telephone number. During the conversation, Bishop directed Patterson to proceed to the Residence and to enter the Residence inside with a hidden garage door opener if Bishop was not present. Patterson had previously agreed with Bishop to sell the Marijuana to Bishop for U.S. Currency after arriving at the Residence.

At around 1:52 p.m., Agents executed a search warrant at the Residence and arrested Bishop. During a search of the Residence, Agents recovered, among other things, over $389,000.00 in U.S. currency, packaging materials, and a large set of digital scales. Bishop maintained a storage room attached to his home and accessed through the garage. In the storage room, there was a storage freezer, a large safe containing a large portion of the bulk cash referenced above, and approximately one kilogram of packaged marijuana.

**Iesberts' Role in the Offense**

If this matter proceeded to trial, the United States would offer facts to prove beyond a reasonable doubt that another co-conspirator, Kimberly Iesberts ("Iesberts"), aided and abetted

CS-1 and Patterson in their conspiracy to distribute the Marijuana in Charlottesville, Virginia, in October of 2012. To facilitate the delivery of the Marijuana to Charlottesville, Virginia, in October of 2012, CS-1 would testify that as CS-1 began traveling from California to Virginia, Iesberts acted as the point of contact between CS-1 and Patterson, keeping tabs on CS-1's progress and whereabouts nearly every day during CS-1's trip and reporting this information to Patterson. This information is corroborated by telephone records and a recorded controlled telephone call between CS-1 and Iesberts. CS-1 would also testify that Iesberts helped load the Marijuana into the concealed storage compartments on CS-1's RV.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

(1) The defendant is fully competent and capable of entering into a plea agreement and making an informed plea;

(2) The defendant is aware of the nature of the charges and the consequences of her plea;

(3) The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

(4) The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One of the Indictment. The undersigned DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for August 12, 2013 at 10:00 a.m. before the presiding District Judge in Charlottesville.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C). Within fourteen days (14) after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within fourteen days could waive appellate review. At the conclusion of the fourteen-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ [signature]
United States Magistrate Judge

5-2-2013
Date